IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SMOKY HILLS WIND FARM, LLC, *et al.*,

      Plaintiffs/Counterclaim Defendants,

v.                                              Case No. 6:15-CV-1116-JTM-KMH

MIDWEST ENERGY, INC.,

      Defendant/Counterclaimant.

**MEMORANDUM AND ORDER**

Plaintiffs Smoky Hills Wind Farm, LLC and Smoky Hills Wind Project II, LLC seek monetary damages from defendant Midwest Energy, Inc. for alleged breach of contract. Before the court is plaintiffs' Motion to Remand, which also includes a motion for associated costs and attorney fees (Dkt. 12). For the reasons stated below, plaintiffs' motion is granted in part and denied in part.

**I. Background**

Plaintiffs are wholly owned subsidiaries of Enel Green Power North America, Inc., through which Enel operates renewable energy generating facilities in Kansas. Defendant is a Kansas rural electric cooperative. The parties, along with a federally chartered Regional Transmission Organization known as the Southwest Power Pool, Inc. ("SPP"), entered into a Large Generator Interconnection Agreement in 2005.[1] Through this Interconnection Agreement,

---

[1] Smoky Hills Wind Project II, LLC was added as a party to this Interconnection Agreement in 2008.

plaintiffs and the SPP agreed to interconnect plaintiffs' renewable energy generating facilities with the interstate electric Transmission System.  The Transmission System is composed of the facilities owned and operated by defendant, pursuant to SPP's Open Access Transmission Tariff ("SPP OATT").  The SPP OATT is filed with the Federal Energy Regulatory Commission ("FERC") in accordance with the Federal Power Act ("FPA"), 16 U.S.C. § 824d, and FERC regulations.  Plaintiffs and defendant are also party to a separate Renewable Energy Purchase Agreement ("REPA"), which sets forth the terms and conditions of the sale of renewable energy between the parties.  The content of the REPA is the subject of this case.

Between March 2012 and August 2014, the SPP ordered a series of electricity generation curtailments.  Due to these curtailments, plaintiffs allege that they delivered and sold less energy to defendant, resulting in a total loss of $1,848,607.89.  According to plaintiffs, defendant is obligated to pay them for these losses, which defendant allegedly has refused to do.

On December 30, 2014, plaintiffs filed suit against defendant alleging breach of contract in the Reno County District Court, in Reno County, Kansas.  Dkt. 1-2.  On April 13, 2015, defendant timely filed a Notice of Removal to the United States District Court for the District of Kansas.  Dkt. 1.  On April 30, 2015, plaintiffs filed a Motion to Remand.  Dkt. 12.[2]

## II. Legal Standard

"The district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation and citation omitted). Federal subject matter jurisdiction is essential to "every cause under review in the federal courts." *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1022 (10th Cir. 2012). A civil

---

[2] It should be noted that, prior to plaintiffs filing their Motion to Remand, defendant filed a Motion to Dismiss (Dkt. 6).  On May 13, 2015, Magistrate Judge Karen M. Humphreys issued an order extending plaintiffs' time to file a responsive pleading until ten (10) days after this court issues its ruling on the Motion to Remand.  Dkt. 16.

action brought in state court may be removed to federal court if "federal subject-matter jurisdiction would exist over the claim." *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220 (10th Cir. 2011); *accord Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The court must remand the action "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). Federal courts have original subject matter jurisdiction over questions of federal law and over actions between parties of diverse citizenship if the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332. Where, as here, the parties are not diverse, removal is only proper under federal question jurisdiction. *Caterpillar*, 482 U.S. at 392.

### III. Analysis

Federal question jurisdiction exists for claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The well-pleaded complaint rule requires that the federal controversy be "disclosed on the face of the complaint, unaided by the answer or by the petition for removal." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936); *accord Karnes v. Boeing Co.*, 335 F.3d 1189, 1192 (10th Cir. 2003). A federal defense cannot be the basis for removal. *Caterpillar*, 482 U.S. at 392-93. "The well-pleaded complaint rule makes the plaintiff the master of his claim." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotation omitted). A plaintiff may avoid federal jurisdiction by relying solely on state law, but not "by omitting federal issues that are essential to his . . . claim." *Id.*; *accord Caterpillar*, 482 U.S. at 392.

"A case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Morris v. City of Hobart*, 39 F.3d 1105, 1111

(10th Cir. 1994) (internal quotation and citation omitted). Thus, two prongs of federal question jurisdiction exist: actions created by federal law and actions requiring resolution of a substantial question of federal law.

A case arises out of federal law "if it clearly and substantially involves a dispute or controversy respecting the validity, construction or effect of such laws." *Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375, 1381 (10th Cir. 1978) (citing *Shulthis v. McDougal*, 225 U.S. 561 (1912)). "A tariff filed with a federal agency is the equivalent of a federal regulation." *Praire Horizon Agri-Energy, LLC v. Tallgrass Interstate Gas Transmission, LLC*, 2014 U.S. Dist. LEXIS 177627 (D. Kan. Dec. 29, 2014) (quoting *City of Chanute v. Kansas Gas and Elec. Co.*, 2007 U.S. Dist. LEXIS 25700, at *12 (D. Kan. Apr. 4, 2007). Accordingly, a claim that involves the validity, construction, or effect of a filed FERC tariff invokes federal subject matter jurisdiction. *See Berstein Bros. Pipe & Mach. v. Denver R.G.W.R. Co.*, 193 F.2d 441, 444 (10th Cir. 1951).

The basis of defendant's Notice of Removal is as follows. Plaintiffs operate a renewable energy generating facility and delivers energy to defendant pursuant to the REPA. In addition to being bound by the REPA, and purely by virtue of being members of the SPP, the parties are also bound by the SPP Bylaws. The SPP Bylaws, because they have been approved by the FERC, have the full force and effect of a federal regulation. The Bylaws are incorporated into the REPA. Therefore, any interpretation of the REPA must be done with consideration and application of the Bylaws, thereby making plaintiffs' breach of contract claim necessarily one that requires interpretation of federal law. Dkt. 1.

Plaintiffs do not contest the fact that the parties are subject to the SPP Bylaws, the SPP OATT, or any other federal regulation dealing with the transmission of energy. They *deny*,

however, whether, for the particular claim at issue -- breach of contract -- interpretation of these Bylaws or federal regulations is necessary. The court agrees.

The dispute at the heart of this case seems to focus on a very specific question: "who is obligated under the REPAs to pay for the loss arising out of a series of curtailments ordered by the SPP[?]" Dkt. 19, at 3. The answer to that question, plaintiffs allege, can be answered solely by looking to the REPA. There are two types of curtailments defined in the REPA: emergency curtailments and economic curtailments. An Emergency Curtailment is defined as "an emergency condition as defined as 'TLR Level 6 – Emergency Procedures' in the SPP OATT Attachment R Transmission Loading Relief Procedures." Dkt. 14, at ¶ 21. An Economic Curtailment is a curtailment declared by the SPP that does not arise from an Emergency. Dkt. 14, at ¶ 15. Pursuant to the REPA, defendant is only responsible for payment for losses incurred during a curtailment if the SPP declares the curtailment to be economic:

> [defendant] shall be responsible for all electric losses, transmission and ancillary service arrangements and costs required to receive the Renewable Energy and Test Energy after receipt at the Point of Delivery, and transmit such Renewable Energy and Test Energy on a firm transmission service basis to load but, if such firm transmission service is curtailed for an Emergency, then [defendant] shall have no obligation to make payment to [plaintiffs] as a result of such curtailment.

Dkt. 1-4, at 24.

This court most recently took up an issue dealing with a FERC tariff in *Prairie Horizon Agri-Energy, LLC v. Tallgrass Interstate Gas Transmission, LLC*, 2014 U.S. Dist. LEXIS 177627 (D. Kan. Dec. 29, 2014). In *Prairie Horizon*, the plaintiff entered into a service agreement with the defendant to transport, supply, and deliver natural gas to plaintiff's ethanol facility. 2014 U.S. Dist. LEXIS 177627, at *2. The terms of the agreement were fixed by the defendant's schedule of rates and charges (i.e., the tariff) filed with the FERC pursuant to the Natural Gas Act. *Id*. A quality provision in the schedule allegedly required that the gas

delivered to the plaintiff's facility be "free from foreign material or oil." *Id*.  At some point thereafter, the defendant's pipeline allegedly injected a large quantity of foreign material and oil into the plaintiff's facility, causing catastrophic damage.  *Id*. at *2-3.  The plaintiff filed a two-count action alleging negligence and breach of contract in the District Court of Phillips County, Kansas.  *Id*. at *3.  The defendant removed the action to federal district court and the plaintiff filed a motion to remand.  *Id*.

In its decision, the district court held that the ambiguity of the agreement provision at issue "necessarily require[d] construction of the tariff to determine what duty or obligation was owed by defendant."  *Prairie Horizon*, 2014 U.S. Dist. LEXIS 177627, at *6.  The court therefore held that resolution of the question turned on a substantial question of federal law and denied the motion to remand.  *Id*. at *6-7.

It may seem, and defendant would certainly have this court believe, that resolution of plaintiffs' breach of contract claims requires a decision as to what *type* of curtailment is at issue: emergency or economic.  To make this determination necessarily requires interpretation of federal law: after all, the REPA itself states that an "emergency curtailment" can only be determined by looking to Attachment R of the SPP OATT, a decidedly federal regulation.

This, however, is not the case.  In their Complaint, plaintiffs allege that "[i]t is *undisputed* that the TLR Level 6 – Emergency Procedures were not the reason for the Curtailments. Therefore, the Curtailments were Economic Curtailments because the SPP did not declare the Curtailments for an Emergency."  Dkt. 14, at ¶ 22.  Defendant does not dispute this assertion in any fashion. This court has no choice, then, but to take the Complaint at its word: the curtailments at issue were previously decided to be of an economic, not an emergency nature.

The only question remaining, then, is who, if anyone is liable for the monetary losses suffered by plaintiffs due to these economic curtailments.  The REPA very clearly defines liability for economic curtailments.  As such, plaintiffs' claims are simple state-law breach of contract claims that neither require construction of a federal regulation nor challenge its validity.  As such, the claim does not present a substantial question of federal law.[3]  The court therefore lacks subject matter jurisdiction and the claims must be remanded to the state court pursuant to 28 U.S.C. § 1447(c).[4]

Plaintiffs also seek just costs, expenses, and attorney fees as a result of defendant's "improper" removal.  "An order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c) (emphasis added).  Such an award is within the court's discretion.  *See Suder v. Blue Circle*, 116 F.3d 1351, 1352 (10th Cir. 1997) (citing *Daleske v. Fairfield Cmtys., Inc.*, 17 F.3d 321, 324-25 (10th Cir. 1994)).  In deciding whether to award costs, "the key factor is the propriety of defendants' removal."  *Ambler v. CorMedia LLC*, 2013 U.S. Dist. LEXIS 89636, at *10 (D. Kan. Jun. 26, 2013) (quoting *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997)).  The court "does not have to find that the state court action has been removed in bad faith as a prerequisite to awarding attorney fees and costs under § 1447(c)."  *Id*.

Here, plaintiffs have not demonstrated that the removal was objectively unreasonable.  Plaintiffs' request for costs, expenses, and attorney fees is therefore denied.

---

[3] There is no argument by either party that the claim at issue is federally created.
[4] The court is cognizant of the fact that defendant makes an argument that this suit is not properly brought in *any* court because the SPP Bylaws and the SPP OATT set forth mandatory dispute resolution procedures and waivers. Dkt. 17, at 7.  Given the court's decision to remand this case, it declines to address this issue.

**IT IS ACCORDINGLY ORDERED** this 22nd day of June, 2015, that plaintiffs' Motion to Remand (Dkt. 12) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** to the extent that this matter is remanded back to the state court.  The motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that defendant's Motion to Dismiss (Dkt. 6) is hereby denied as moot.

s\ J. Thomas Marten
J. THOMAS MARTEN, CHIEF JUDGE